# Wheeling.

## JOHN F. REGNAULT vs. JOHN A. HUNTER.

### January Term, 1870.

1. An action of debt will lie under sec. 10, chap. 144, Code 1860, in the name of the payee of a bill of exchange, against the acceptor, provided it be averred in the declaration that the acceptance is signed by the party who is to be charged thereby, or his agent.

2. An action of debt will lie in the name of the drawer of a bill of exchange against the acceptor, independently of the statute, Code of Virginia, 1860, chapter 144, section 10 ; and an action of debt will lie in the name of the endorsee of a bill of exchange against the acceptor under that statute.

This case arose in Greenbrier county in 1867. The following is a copy of the instrument sued on :

"$127.13                         RICHMOND, Aug. 7, 1860.

"Sixty days after date pay to the order of myself, one hundred and twenty-seven dollars and thirteen cents, value received, and charge.to account of, respectfully, &c.,

"JOHN F. REGNAULT,

"per Wm. S. Maule, Attorney.

"To Dr. J. A. Hunter, Lewisburg, Greenbrier county, Va."

The opinion of Judge Maxwell contains an ample statement of the case.

Hon. N. Harrison, Judge of the circuit court of Geenbrier county, presided on the trial of the case.

*John W. Harris* for the plaintiff in error.

This paper was endorsed by Regnault, and accepted by Hunter, by writing his name across the face of the same.

The proper orders having been taken in this case at rules, it was placed upon the office judgment docket of the court, at the April term, 1867, when it was continued without plea or appearance until the next term, and so on until January, 1869, when the defendant was permitted to demur to the declaration, which demurrer was sustained, and judgment entered thereon.    The court erred,

1st. In continuing this case as it did; and

2d. In sustaining said demurrer.

The first proposition we do not propose to consider further than to say, that by sections 44 and 45, chapter 171, Code of 1860, the judgment entered in the office could only have been set aside by an issuable plea, and that no such plea having been filed or tendered, the office judgment should have become the judgment of the court on the rising thereof, and that it was error to enter any order defeating this effect and purpose of the statute.

The ground of the demurrer was, that the instrument declared on is an unprotested inland bill of exchange, and that upon such a paper debt cannot be maintained against the acceptor thereof.

We maintain that it can be, either

1st. At common law;

2d. Under section 10, chapter 144 of the Code of 1860; or,

3d. Under section 11 of the same chapter.

As to the first proposition.    Protest of an inland bill was never necessary at common law, as to any of the parties thereto.    Smith's Merc. Law, (Holcombe and Gholson,) 327; Bac. Abr., vol. 6, 820, n. B; 15 Wend., 428; and cases cited 1 Math. Dig., 395, n. 10.    Even notice of dishonor is not necessary as to the acceptor; not of non-acceptance, because until acceptance there is no liability; not of non-payment, for it is not necessary to notify him of his own default.    The question of protest, therefore, does not enter into this branch of the subject.

But, leaving out this question of protest, can debt be

maintained at common law against the acceptor of an inland bill? The appellee says not, and cites *Mackie's Ex'r.* vs. *Davis, &c.,* 2 Wash., 229. But the point did not arise in that case. That was an action on the case by the assignee of a bond against his assignor for compensation for nonpayment by the obligor. What, therefore, Roane, J., says on page 229, is mere *obiter dictum;* and, moreover, it is not in accordance with principle. The undertaking of the acceptor, in one sense, it is true, is to pay the debt of another; but it is not a collateral undertaking. A general acceptance is an acknowledgment by the acceptor that he has funds of the drawer in his hands, and a promise to pay them out as the drawer has directed. Chit. on Bills, 280; Lawrence, J., in *Clark* vs *Cock,* 4 East., 72, (Chit., J., 676.) It is, therefore, an absolute promise to pay. *Hollingsworth* vs. *Milton,* 8 Leigh, 50. Tucker, J., in this last case says that the obligation of the acceptor is absolute and unconditional, and that from it nothing can release him. Debt, therefore, can be maintained against him, for this action lies wherever there is a promise to pay a sum certain, (*et id certum est quod certum reddi potem.*) 2 Tuck. Com., 96–7; 1 Chitty Pl., 101; Bac. Abr., Debt, E; or even where the common law creates a duty for the payment of money. *Robarg et al.* vs. *Peyton,* 2 Wheat., 376.

It is true that the court of appeals of Virginia held that this action did not lie against the acceptor of a bill in *Smith* vs. *Segar,* 3 H. & M., 394, decided in 1809, and in *Wilson* vs. *Crowdhill,* 2 Munf., 302, decided in 1811; but in *Robarg et al.* vs. *Peyton,* 2 Wheat., 382, decided by the supreme court of the United States, in 1823, in *Priddy et al.* vs. *Embry,* 1 Barn. & Cress., 674, 8 Eng. C. L., 179, decided in 1823, and in the latter cases of *Hatch* vs. *Trayes* and *Watson* vs. *Knightly,* 11 Ad. & El., 702, 39 Eng. C. L., the contrary doctrine was held. See, also, Chit. on Bills, (11 Am. Ed.,) 161, 690; 1 Chit. Pl., (9 Am. Ed.,) 109; 1 Saund. Pl. and Ev., (5 Am. Ed.,) 447, and 3 Rob. Pr. 377, to the same point, where a large number of authorities are cited and ap-

proved. In *Priddy et al.* vs *Embry* and *Hatch* vs. *Trayes, ubi supra,* the payee was, as in the case at bar, the drawer; and in the former it was held that there was an immediate privity, as in the case here, between the plaintiff and defendant independently of the bill. In some of the above cases it was held that the words "value received" must be contained in the bill. They are in the one sued on. But even this is not now considered necessary. 11 Ad. &. El., 702; 3 P. & D., 408; 4 M. & W., 138. In the case of *Hollingsworth* vs. *Milton,* 8 Leigh, 50, the court of appeals of Virginia held, long subsequent to *Smith* vs. *Segar, &c.,* that debt could be maintained by the payee against the acceptor of an order. How can that case be distinguished, in principle from the one at bar? This is as much an order from Regnault to Hunter, accepted by the latter, as that was an order from Allen to Hollingsworth, accepted by Hollingsworth. The fact that in this case the payee was the maker, does not change the principle.

*Smith* vs. *Segar* and *Crowdhitl* vs. *Wilson,* therefore, being insupportable on principle, and very old cases, in conflict with the opinions of the best text writers, and the decisions, through a long series of years, of the highest tribunals in England and in this country, should not be regarded as binding precedents by the court of appeals of West Virginia.

2. Debt lies, in this case, under section 10, of chapter 144, Code of 1860. Assuming that the statute was the same, when the cases of *Smith* vs. *Segar, &c.,* were decided as it is now, the effect of the statute was not raised or considered in those cases, and they, therefore, can have no application to this branch of our argument. But these statutes are essentially different. The one then existing was as follows: "An action of debt may be maintained upon a note in writing, by which the person signing the same shall promise, or oblige himself, to pay the sum of money or quantity of tobacco to another." This act seems to have been passed merely for the purpose of adding to the common law right

to bring an action of debt on a promise to pay money, the right to bring it on a promise to pay tobacco.  It appears to apply only to the ordinary cases, where a party has written, "I promise to pay," or, "I oblige myself to pay," or words of similar import, giving the promissee or obligee the same action, whether this promise or obligation is to pay tobacco or money.  But the act as it stands in the Code of 1860 is, "an action of debt may be maintained upon any note or writing by which there is a promise, undertaking or obligation to pay money," &c.  Assuming, therefore, that the acceptance of a bill is not, as heretofore shown, a promise to pay, it certainly creates an obligation to pay, and the declaration alleges that by non-payment when due, of the sum called for by this writing, "an action hath accrued to the said plaintiff to demand and have of and from the said defendant," &c.

3. Debt lies in this case under section 11, of the same chapter.  This statute gives it in terms.  The appellee claims, however, that this sratute must be strictly construed, and that so construing it, it requires that the bill should be first protested.  Now, although it is true that a statute in derogation of the common law must be construed strictly, this rule is subject to the one which requires that it must be so construed as to give effect to the purpose for which it was enacted.  What was that purpose ?  In part the settlement of this very question, by doing away with the doubt raised by the decisions in *Smith* vs. *Segar* and *Crowdhill* vs. *Wilson.*  Rep. Rev. Code, page 722.  It was, professedly, a remedial statute, enlarging the common law remedies.

But, at common law, as heretofore shown, protest was never required as to any of the parties to an inland bill, but only notice of dishonor to the drawers and endorsers; and in the case of a foreign bill, even, protest was required only as to the same parties.  It is contrary to the whole theory of bills of exchange, to require protest in order to charge the acceptor.  The acceptor is the principal, the one primarily liable, occupying the same relative position as the

drawer of a note. Why should protest be required as to him? Protest cannot inform him of anything that he does not already know; he cannot by possibility either gain or lose by it. It is the drawer and endorsers alone who might be injured if protest was not made in the case of a foreign bill, or notice, in lieu of protest, given in the case of an inland bill. They must be informed, and they only, of the dishonor, in order that they may take such measures, by drawing their funds, or otherwise, as may be necessary for their protection. Chit. on Bills, 433, 435. Must a statute professedly remedial in its nature, be so construed as to defeat its very purpose, as to require something that the common law never required, although intended to be in aid of the common law? Certainly not. And the statute must be taken all together. Emasculate it as the counsel for the appellee has done, and it will read, "upon any such note," * * * * * "if the same be protested, an action of debt may be maintained," &c. Is it, therefore, to be contended that protest of a negotiable note is necessary, in order to bind the maker? And yet, according to his process of reasoning, this statute requires it, which is absurd. That the legislature did not intend to make protest a prerequisite, is further shown by the preceding section 7, which provides that an inland bill may be protested, and the protest be evidence of the same facts as in case of a foreign bill. This eleventh section has a fourfold object, viz: to settle the question raised in this suit; to re-enact the statute of 3 and 4 Ann., c. 9, as to such promissory notes as were made payable at bank; that is, to make them merchantable paper; to change the ruling in *Taylor* vs. *Beck*, 3 Rand., 328, that all or one of the makers and endorsers of a note or bill must be sued; and to place negotiable notes on the same footing as bills of exchange. Rep. Rev. Code, p, 722–3. All these purposes were blended together in one section, in pursuance of the object of the revisors, to condense the statute law as much as possible, and they employed such general language as would enable them to do

so, without intending to restrict or take away any right en-
joyed before. All these things must be looked to in its con-
struction, and then the word "protest" will be given its
proper application, and not be made to mean, not merely
that an inland bill must be protested, in order to sustain an
action of debt against the acceptor, but, as before shown,
that a note must be protested to sustain an action of debt
against the maker.

In either view, therefore, of this subject, we claim that
the judgment of the court below should be reversed, and
such judgment be now rendered here as should have been
rendered in that court.

*Snyder* for the defendant in error.

This is an action of debt upon an unprotested bill of ex-
change by the drawer against the accepter. The ground
of demurrer to the declaration is, that this form of action
will not lie in this case. It is, however, not claimed that
an action of debt does not lie upon a bill of exchange, for
it has always been held that such an action would lie against
the drawer or endorser; but it is contended that under the
common law, as settled by decisions in Virginia, which are
authority in this State, that an action of debt will not lie
against the acceptor; nor is this law changed by statute,
except in cases where the bill has been protested.

The appellant, in his petition, has cited numerous au-
thorities to show that an action of debt may be maintained
upon a bill of exchange. This general proposition is not
denied. But if the court will take the trouble to examine
these cited cases, it will find that they are generally actions
against the makers and endorsers, and not acceptors. There-
fore, the doctrine laid down in those cares has no applica-
tion to the case at bar, for this is against an acceptor. We
say, then, that by the common law, debt does not lie against
the acceptor.

In the early cases, it was held, that the action against an
acceptor must not be debt or *indebitatus assumpsit*, but a spe-

cial action on the case, because his acceptance is but a collateral engagement. Hardr., 483; *Brown* vs. *London*; 1 Mod., 285; 1 Esp. N. P., 183; and 4 Bac. Abr., (Gwill. Ed.) 732. But it lies against the drawer himself, for he is really a debtor by the receipt of money. *Cloves* vs. *Williams*, 3 Bing. N. C. 868, and *Bishop* vs. *Young*, 2 Bos. and Pul., 78. This doctrine was adopted by the courts of Virginia, as early as the year 1796, in the case of *Mackie's Ex'r.* vs. *Daais, &c.*, where Roane, J., says, that the "acceptor of a bill of exchange undertakes to pay the debt of another, and, consequently, can only be charged in a special action on the case, founded upon the custon of merchants." 2 Wash., 229. In the case of *Smith* vs. *Segar*, decided in 1809, Roane, J., said: "In *Hoe* vs. *Wilson*, and *Dunlap* vs. *Triptell*, (two MS. cases,) the authority of Chitty on Bills was relied on, but overruled," and when the counsel for the appellee was arguing to show that the action of debt would not lie against the acceptor, he was stopped by the court, who unanimously decided that the action of debt would not lie. 3 H. & M., 397. In *Wilson* vs. *Crowdhill*, decided in 1811, the President pronounced the opinion of the court, "that an action of debt will not lie against the acceptor of a bill of exchange." 2 Munf., 302. These cases are precisely analagous to, and must rule the case at bar, unless they have been overruled or altered by statute since. The case of *Hollingsworth* vs. *Milton*, 8 Leigh, 50, relied on by the appellant, is the only case decided since those cases having any bearing upon the question here involved. This was an action of debt by the payee against the acceptor of an order, and is not analagous to the case here. For, in that the declaration contained three counts, and Tucker, P., in delivering the opinion of the court, says, "the only question presented arises upon the general demurrer to the declaration, and if any one of the counts is good, that demurrer must be overruled. Now, upon examining the forms in Chitty's very valuable book of precedents, vol. 2, pages 385–7, it is obvious that the second count, (for money had and received,) and the third count

(upon an account stated) are taken *verbatim et literatim* from these forms. * * * * "I think, therefore, that even though the first count be bad, on the ground that debt does not lie against the acceptor of an order, (for this is no bill of exchange,) yet the demurrer was properly overruled and judgment entered on the verdict." 8 Leigh, 51–2. What follows in this opinion is mere *obiter dictum*, and would not be binding upon this court, even did it relate to an acceptor of a bill of exchange, (which he expressly says it does not,) instead of an order. The cases of *Smith* vs. *Wilson*, and *Wilson* vs. *Crowdhill* are referred to, and the court does not question their authority or offer an intimation that they should be overruled. Their binding authority is tacitly, if not expressly, conceded. Whether this question has been settled right or wrong, still it is *res-adjudicata*, and it is for the legislature and not the courts to alter the law. And, it might, if deemed necessary, be here suggested, that a bill of exchange is governed by the law merchant, while a simple order is not. *Averell's Administrator* vs. *Booker*, 15 Grattan, 163.

But the appellant concludes that this action may be maintained under section 10, chapter 144, Code of Virginia, page 629. If we are correct in what has preceded, we think such cannot be the case. The first statute passed in Virginia, involving the matter in this section, was the statute of 1705, (4 Anne,) which was amended in 1730, and in 1786 it was again amended and enacted as follows: "An action of debt may be maintained upon a note, or writing, by which the person signing the same, shall promise or oblige himself to pay a sum of money or a quantity of tobacco to another." 12 Hen. Stat. 359.

This statute is substantially the same as our present statute, and if any difference, the former is more comprehensive than the latter. Section 10, chapter 144, above cited. In the Virginia decisions, above cited, all of which were decided since the enactment of the statute of 1786, the courts held that the action would not lie, notwithstanding that

statute. The only intimation on the subject in those cases is that in *Hollingsworth* vs. *Milton,* Tucker, P., says, "that I have no doubt that under the 4th section, chapter, 1 R. C., 484, (which is the statute of 1786,) an action of dept lies against the acceptor of an order." But he does not pretend that under that statute it would lie against the acceptor of a bill of exchange, for, on the contrary, he says that the paper then under consideration is not a bill of exchange. Therefore, we are driven irresistibly and unavoidably to the conclusion, that this action cannot be maintained under the common law, as settled and construed by the supreme court of Virginia, at a time when this State was a part of that, and is, therefore, obligatory upon the courts of this State; and that it cannot be maintained under section 10, chapter 144, of the Code, because the same court has held that it could not be maintained under the statute of 1786, which is more comprehensive than that section. And, moreover, a proper reading of section 11, of same chapter, precludes the construction that bills of exchange were intended to be embraced in section 10.

And, finally, it is claimed by the appellant, that this action may be maintained under section 11, chapter 144, Code of Virginia, page 629. This is the section by which the revisors of the Code, in their report, on pages 722–3, say they intended to settle this "vexed question." Have they done it? It is conceded they have, by this statute, so far changed the law as to allow an action of debt against the acceptor of a bill of exchange, "if the same be protested." These are the precise words used in the statute. I take it to be unnecessary to cite authorities to show that this statute, being, as we have shown, in derogation of the common law, as settled in this State, must be construed strictly; and that a party claiming the benefit of its provisions must bring himself within its exact terms. We have shown that under the common law of this State an action of debt does not lie in this case. Then, in order to get the benefit of this statute, which allows the action upon certain conditions,

the appellant must bring his case within the terms of those conditions strictly construed. Now, what are the terms upon which the statute allows the action? "Upon any such note," * * * "or bill of exchange," * * * "if the same be protested, an action of debt may be maintained," &c. The protest here, is the condition upon which the action of debt is authorized against the acceptor by the statute, and without the statute, under the laws of this State, it has been held that it will not lie. Then, if the action is to be maintained under this statute, it must be under the terms of the statute, one of which is, that it must be protested. Therefore, we claim that, inasmuch as the declaration in this case does not aver protest, the action cannot be sustained under this statute; and having before shown that it does not lie under section 10, or the common law, we conclude that the demurrer was properly sustained.

It is not claimed by the appellee, as erroneously supposed by the appellant, that in order to render the acceptor of a bill of exchange liable, it must be protested; but it is claimed that, in order to sustain an action of debt upon it under section 11, above cited, it must be protested, because the statute says so in express terms. Where the bill is not protested, there still remains the common law procedure of a special action on the case against the acceptor. 2 Washington, 229; 3 H. & M., 394, and 2 Munford, 302, above cited.

It is strange, so strange, that we cannot pass it without a casual notice, that the appellant, while he has cited authorities, quite profusely, has cited very few American, and no Virginia authorities to sustain his position, and yet he has the temerity to urge upon this court that the decisions in the cases of *Smith* vs. *Segar*, and *Wilson* vs. *Crowdhill*, "are in conflict, not only with a number of decisions prior to that time, (1811,) but what seems to have been the uniform decision since." We challenge the production of a single decision, by any court of Virginia, or of this State, either prior to or since those cases, that is in conflict with them,

The law has been adjudicated and settled in this State, and thus the courts will let it rest until the legislature sees proper to alter it. "*Stare decisis et quieta movere.*" 3 Kernan's R., 500.

We submit that the judgment of the court below should be affirmed.

MAXWELL, J. This was an action of debt, brought in the circuit court of Greenbrier county, by Regnault against Hunter. The declaration avers that, "on the 7th day of August, 1860, the said plaintiff made his bill of exchange in writing, and directed the same to the said defendant, and thereby required the said defendant to pay to the said plaintiff 127 dollars and 13 cents, sixty days after date, which period had elapsed before the commencement of this suit. And the said defendant then and there accepted the bill, and delivered the same to the said plaintiff, and then and there agreed to pay the said plaintiff the amount of the bill, according to the tenor and effect thereof, and of the said acceptance thereon. And the said plaintiff avers that afterwards, to wit: on the 9th day of October, 1860, when, according to the tenor and effect thereof, and the usage and custom of merchants, the same became due and payable, the same was presented for payment to the said defendant, but the said defendant did not, nor did any other person, pay the same, whereby an action hath accrued to the said plaintiff to demand and have of and from the said defendant the said sum of 127 dollars and 13 cents, above demanded, with interest from the 9th day of October, 1860, until paid. Yet the said defendant, although often requested," &c. To this declaration there was a demurrer, which was sustained by the court below, and judgment given for the defendant. There are supposed by counsel to be some other questions in the record, but by an agreement in writing, they expressly agree that this court shall determine the case upon the sole question raised by the demurrer to the declaration.

The counsel for the defendant contends, that an action of debt will not lie for the maker of a bill of exchange against the acceptor, and, therefore, the demurrer to the declaration was properly held well taken.

The first case cited by the counsel for the defendant is the case of *Mackie's Ex'r.* vs. *Davis*, 2 Wash., 219. This was an action on the case brought by the appellees against the appellant, to recover the amount of a bond on another party assigned by Mackie to the appellee, and which they were unable to collect on account of the insolvency of the maker of the bond. The question of the liability of the acceptor of a bill of exchange could not, and did not arise, nor was such a question decided in that case, although one of the judges incidentally referred to the subject in his opinion. The case is, therefore, not to be regarded as authority in this case.

Another case referred to, is that of *Smith* vs. *Segar*, 3 H. & M., 394. This was an action of debt by Smith against Segar. The declaration charged that the defendant, Segar, being indebted to a certain Saunderson, in the sum sued for, the said Saunderson, on the 6th of November, 1797, made his request in writing, directed to the defendant, requiring him to pay the amount to the plaintiff, or order, at sixty days after date, which request being afterwards shown and presented to the defendant, he, on the 11th of December, 1797, accepted, in writing, to pay the same, &c. The plea was payment. The judgment of the county court was for the plaintiff, which was reversed by the district court, and the judgment of the district court was affirmed, but it does not appear on what grounds. This was an action in the name of the payee, against the acceptor, and in that respect differs from the case under consideration. Another case referred to by the counsel for the defendant is that of *Wilson* vs. *Crowdhill*, 2 Munford, 302. This was an action of debt against the acceptor of a bill of exchange. Judgment was for the plaintiff in the county court, and affirmed by the district court, which was reversed by the court of appeals.

The report of the case, says the president pronounced the opinion of the court, that an action of debt will not lie against the acceptor of a bill of exchange.

The report of this case does not show what the declaration was, or whether the action was in the name of the maker or payee against the acceptor, and it may have been like the case of *Smith* vs. *Segar*, an action in the name of a payee.

The case of *Robarg* vs. *Peyton*, 2 Wheat., 385, is referred to by the counsel for the plaintiff. This was an action of debt brought against the defendant as acceptor of a bill of exchange, by the plaintiffs as endorsees. The declaration charged that the bill was drawn, accepted, and endorsed for value received, and the only question was whether debt would lie in such a case?

The court was of opinion that debt lies upon a bill of exchange by an endorsee of the bill against the acceptor, when it is expressed to be for value received. The decision in this case is in conflict with the cases of *Smith* vs. *Segar*, and *Wilson* vs. *Crowdhill*, and is subsequent to them.

In the case of *Cloves* vs. *Williams*, 32, Eng. Com. Law Rep., 360, and in the case of *Powell* vs. *Ancell*, 42 Eng. Com. Law Rep., 97, it was held that the endorsee of a bill of exchange cannot maintain an action of debt against the acceptor. These two cases agree with the cases of *Smith* vs. *Segar*, and *Wilson* vs. *Crowdhill*, but are opposed to the case of *Robarg* vs. *Peyton*.

In the case of *Priddy, &c.*, vs. *Embry*, 8 Eng. Com. Law Rep., 479, it was held that an action of debt would lie in the name of the drawer, who was payee against the acceptor of a bill of exchange. In the case of *Watson* vs. *Kightley*, 39 Eng. Com. Law Rep., 207, the declaration charged that plaintiff, on the 10th of January, 1839, made his bill of exchange in writing, and directed the same to defendant, and thereby required defendant to pay to plaintiff or his order, £7. 8s. 10d., one month after date, which period had elapsed before the commencement of the suit; and defendant, then

and there, accepted the bill, and delivered the same to the plaintiff, and then and there agreed to pay plaintiff the amount of the bill, according to the tenor and effect thereof, and of the said acceptance thereon. To this declaration there was a demurrer. The court held that an action of debt would lie, and overruled the demurrer. This case is almost exactly like the one under consideration, even to the form of the declaration, and is the same in substance as the case of *Priddy* vs. *Embry*, and the last named two cases decide that an action of debt will lie in the name of the drawer against the acceptor of a bill of exchange. Of the other cases cited, none of them conflict with these, because the others refer to actions in the name of the payee against the acceptor, and not in the name of the maker against the acceptor.

The case of *Hollingsworth* vs. *Milton*, 8 Leigh, 50, is also cited by the plaintiff. This was debt by the payee, of an order against the acceptor. The declaration averred that the acceptor, by indorsement thereon signed, with the proper name of him, the said H., the acceptor, by his own hand, accepted the same. It was held that the action could be maintained under the fourth section, of chapter 125, of the 1st Revised Code of Virginia, page 484, which is the equivalent of the tenth section, of chapter 144 of the Code of Virginia, page 629, in force when the case under review was decided.

Section 10, of chapter 144, Code of Virginia, page 629, provides that, "an action of debt may be maintained upon any note or writing, by which there is a promise, undertaking, or obligation to pay money, if the same be signed by the party who is to be charged thereby, or his agent."

This section, and the construction of it, given in the case of *Hollingsworth* vs. *Milton*, overrules the cases of *Smith* vs. *Segar*, *Wilson* vs. *Crowdhill*, *Cloves* vs. *Williams*, and *Powell* vs. *Ancell*, and sustains the case of *Robarg* vs. *Peyton*, that an action of debt will lie in the name of the payee of a bill of exchange against the acceptor, provided it be averred in the

declaration that the acceptance is signed by the party who is to be charged thereby, or his agent.

The result, therefore, is, that an action of debt will lie in the name of the drawer of a bill of exchange against the acceptor, independently of the statute, and that an action of debt will lie in the name of the endorsee of a bill of exchange against the acceptor under the statute.

The declaration in the case under review is, therefore, good, independently of the statute, but would not be good under it.

The judgment complained of will have to be reversed, with costs, the demurrer overruled, and judgment entered for the plaintiff.

The other judges concurred.

JUDGMENT REVERSED.